IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| CHRISTINE A. DOSSENBACK,<br><br>Plaintiff,<br><br><br><br>vs.<br><br><br>JO ANNE B. BARNHART, Commissioner of Social Security,<br><br>Defendant, | **MEMORANDUM OPINION<br>AND ORDER**<br><br><br><br><br><br>Case No. 2:06-CV-00747<br>Dee Benson |

Christine A. Dossenback appeals the decision of the Social Security Commissioner denying her applications for Supplemental Security Income under sections 1602 and 1614(a)(3)(A) of the Social Security Act, and a period of disability or disability benefits under sections 216(I) and 223 of the Act.  Having considered the parties' briefs, the administrative record, the arguments of counsel and the relevant law, the Court AFFIRMS the Commissioner's decision.

## <u>LEGAL STANDARDS</u>

This Court's review is guided by the Act and is limited to determining whether the Commissioner's decision is supported by substantial evidence in the record as a whole and

whether the Commissioner applied the correct legal standards.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Madrid v. Barnhart, 447 F.3d 788, 790 (10th Cir. 2006).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005).  This Court "may neither reweigh the evidence nor substitute [its] judgment for that of the [ALJ]."  White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).

An individual is under a disability only if that individual can establish that she has a physical or mental impairment which prevents her from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months.  42 U.S.C. § 423(d); see Barnhart v. Walton, 535 U.S. 212, 217-22 (2002) (providing that both impairment and inability to work must last twelve months).  The claimant's impairments must be of such severity that she is not only unable to perform past relevant work, but cannot, considering her age, education, and work experience, engage in any other substantial gainful work existing in the national economy.  Id.; 20 C.F.R. §§ 404.1520, 416.920.

The Commissioner has established a five-step sequential process to evaluate whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; Allen v. Barnhart, 357 F.3d 1140, 1142 (10th Cir. 2004).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988).

In the first three steps, the Commissioner determines whether the claimant has engaged in substantial gainful activity since the alleged onset, whether she has severe impairments, and

whether the severity of her impairments meets or equals the Listing of Impairments. 20 C.F.R.,

Pt. 404, Subpt. P, App. 1. If a claimant's impairment does not meet or equal a listed impairment,

the Commissioner assess the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§

404.1520 (e), 416.920(e).

After determining the claimant's RFC, the Commissioner evaluates steps four and five,

determining whether the claimant can perform her past relevant work, and whether she is able to

perform other work in the national economy. Williams, 844 F.2d at 751. In steps one through

four the burden is on the claimant to prove a disability that prevents performance of past relevant

work. Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001). At step five, the burden shifts

to the Commissioner to show other jobs in the national economy within the claimant's capacity.

Haddock v. Apfel, 196 F3d 1084, 1088 (10th Cir. 1999).

## **BACKGROUND**

On October 17, 2003, Plaintiff filed an application for a period of disability and disability

insurance benefits under sections 216(i) and 223 of the Social Security Act. On the same date,

Plaintiff also filed an application for supplemental security income under section 1614(a)(3)(A)

of the Social Security Act. In both applications, Plaintiff claimed she became disabled on April

10, 2003, alleging disability based on scoliosis, deteriorating discs, slipped disc, arthritis,

inability to stand or walk, anemia, iron deficiency, migraines, and constant pain in her neck, back

and feet. (Tr. at 78.) Plaintiff was 29 years old on the date she alleges she became disabled.[1]

---

[1]In the "Disability Report" drafted by Plaintiff in support of her application, Plaintiff
listed April 10, 2003 as the date she became disabled. Similarly, at the hearing Plaintiff testified
that she had not worked since April of 2003. (Tr. at 250.) Plaintiff clarified, however, that she
had actually been unable to work "all [her] life but [she] had to work for financial reasons." (Tr.

She is a high school graduate, married, with three children (ages two, seven, and twelve), and has past relevant work as an office manager, nurse assistant, waitress, and cashier.  (Tr. at 250, 253, 280-81.)

Plaintiff's claims were denied initially on February 13, 2004, and denied upon reconsideration on April 23, 2004.  (Tr. at 47-50.)  On April 28, 2004, Plaintiff requested a hearing.  On December 8, 2005, Administrative Law Judge Gilbert Alejandro Martinez presided over Plaintiff's hearing in Salt Lake City, Utah.  By written decision, dated January 24, 2006, the ALJ determined that Plaintiff had not performed substantial gainful activity since her alleged onset of disability.[2]  (Tr. at 16.)  He found that Plaintiff had a lumbar spine disorder, scoliosis, and degenerative disc disease at L4-5, with a left protrusion and foraminal stenosis, and that these were severe impairments.  (Tr. at 17.)  However, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or equaled the impairments under 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing of Impairments, giving special attention to Listing 1.04 under disorders of the spine.  (Tr. at 17.)

The ALJ reviewed the medical records and medical opinions of several physicians who treated Plaintiff during the relevant time period, and he also considered the findings of State

at 78.)

[2]Although Plaintiff represented that she had not worked since April of 2003, the record reveals that Plaintiff worked as a physical therapy aide in a rehabilitation center on weekends during December 2004, and her earnings record confirms that she earned $3,192 in 2004. Nonetheless, the ALJ found that even though Plaintiff had worked during 2004, the earnings posted for that year fell below the level that constitutes substantial gainful activity.  (Tr. at 16.)

agency medical consultants who had reviewed the medical evidence of record.[3]  The ALJ heard

testimony from Plaintiff regarding her limitations and pain, and also heard testimony from

medical experts.  The ALJ found Plaintiff's testimony of subjective complaints and functional

limitations unsupported by the evidence as a whole and therefore not credible.  (Tr. at 21-22.)

After reviewing all the evidence, the ALJ determined that Plaintiff had the residual

functional capacity (RFC) to perform light exertional work with some postural limitations. (Tr.

at 17, Finding No. 5.)[4]  A vocational expert then testified that Plaintiff's past relevant work as a

front office desk clerk and cashier would not be precluded by this RFC.  (Tr. at 283.)  Relying on

this testimony, the ALJ concluded that Plaintiff was capable of performing her past relevant

work, and therefore determined that Plaintiff was not disabled within the meaning of the Act.

(Tr. at 23.)  On July 26, 2006, the Appeals Council denied Plaintiff's subsequent request for

review, making the ALJ's January 24, 2006 decision the Commissioner's final decision for

purposes of judicial review.  See 20 C.F.R. § 416.1481.

## DISCUSSION

Plaintiff's allegations of error stem from the ALJ's assessment of her residual functional

---

[3]The medical evidence was summarized in the ALJ's decision and is not repeated here except as necessary to address the issues presented.  (Tr. at 17-22.)

[4]The ALJ specifically concluded that Plaintiff had the ability to lift and/or carry 20 pounds occasionally and 10 pounds frequently, and could sit in 3-hour increments for a total of 6 hours in an 8-hour day.  He further determined that Plaintiff can "occasionally" perform actions of walking, climbing stairs, squatting, bending/stooping, kneeling, reaching above shoulders, using foot controls and driving an automatic vehicle.  Plaintiff can "frequently" perform actions of pushing/pulling, turning arms and wrists, opening and closing fists and using hands and fingers, and can "continuously" perform actions of balancing.  The ALJ found Plaintiff has "normal vision, hearing, grip strength and fine and manual dexterity bilaterally."  (Tr. at 17.)

capacity (RFC).  The determination of RFC is an administrative assessment, based upon all of

the evidence of how the claimant's impairments and related symptoms affect her ability to

perform work related activities.  See Soc. Sec. Rul. 96-5p, 1996 WL 374183, at *2, *5.  In this

case, Plaintiff claims the ALJ's RFC assessment was erroneous because: (1) he improperly

analyzed her credibility; and (2) he failed to refer to specific findings and medical records to

support his RFC determination.

> A.      **Credibility Assessment**

Plaintiff's claim that the ALJ improperly analyzed her credibility appears to be based on

two different but somewhat related arguments.  First, Plaintiff claims the ALJ erred by failing to

provide specific, clear and convincing evidence for rejecting her testimony.  Second, Plaintiff

claims the ALJ erred in his credibility assessment because he improperly relied on her failure to

pursue treatment as a basis for finding her subjective complaints of pain not credible.  For the

reasons stated below, the Court finds neither argument persuasive.

> 1.      **Failure to Support Credibility Findings**

In Kepler v. Chater, 68 F.3d 387 (10th Cir. 1995), the Tenth Circuit stated that "credibility

determinations are peculiarly the province of the finder of fact, and we will not upset

determinations when supported by substantial evidence."  Id. at 391.  The Tenth Circuit has

explicitly provided that "the ALJ's credibility determinations warrant particular deference"

because

> [t]he ALJ enjoys an institutional advantage in making the type of determination at
> issue here.  Not only does an ALJ see far more social security cases than do
> appellate judges, he or she is uniquely able to observe the demeanor ... of the
> claimant in a direct and unmediated fashion.

White v. Barnhart, 287 F.3d 903, 910 (10th Cir. 2001).  Credibility determinations, however, cannot be based on intangible or intuitive reasons, but "must be grounded in evidence and articulated in the determination or decision."  Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4; see also Kepler, 68 F.3d at 391.  "So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the dictates of Kelper are satisfied."  Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000).

In this case, the ALJ devoted two full paragraphs to an assessment of Plaintiff's credibility.  (Tr. at 21-22, "Regarding the credibility of the claimant . . . .)  Review of the ALJ's written opinion, and these paragraphs in particular, indicates that he thoroughly considered the entire record as well Plaintiff's testimony at the hearing before concluding that "the medical evidence does not support her position" that "her impairments prevent her from performing all work activity."  (Tr. at 21-22.)  The ALJ's written opinion is thorough in laying out the details of contradictory evidence and testimony and makes clear the reasons he did not find Plaintiff's testimony to be credible.  Given these specific findings, the Court concludes that the ALJ's credibility determination is legally sufficient and supported by substantial evidence.

### 2.      Failure to Consider Plaintiff's Inability to Pay

Plaintiff also claims that the ALJ's credibility assessment was erroneous because he improperly relied on her failure to pursue treatment as a basis for finding her subjective complaints of pain not credible.  More specifically, Plaintiff argues the ALJ's decision must be reversed because he failed to explore whether her failure to pursue treatment was due to an inability to pay for such treatment.  In support of this argument, Plaintiff relies on Tenth Circuit

case law which provides that before rejecting allegations of pain based on a claimant's failure to

pursue treatment, the ALJ should consider: "(1) whether the treatment at issue would restore

claimant's ability to work; (2) whether the treatment was prescribed; (3) whether the treatment

was refused; and if so, (4) whether the refusal was without justifiable excuse." Ragland v.

Shalala, 992 F.2d 1056, 1060 (10th Cir. 1993).

     Although Plaintiff provides a correct statement of the law, the Court finds it inapplicable

to the facts of this case.  As explained in detail above, contrary to Plaintiff's assertion, the ALJ's

credibility determination was not *based on* Plaintiff's failure to pursue treatment.  As previously

explained, the ALJ's written opinion devoted two full paragraphs to the specific topic of

Plaintiff's credibility.  Notably absent from these paragraphs is any reference to Plaintiff's

failure to pursue treatment.  Had Plaintiff's failure to pursue treatment been such an important

factor, as Plaintiff alleges, the ALJ certainly would have included it within the section

specifically devoted to his findings regarding Plaintiff's credibility.[5]

---

     [5]While recognizing that the ALJ did refer to Plaintiff's "failure to follow through with
treatment" during his discussion of the medical evidence, the Court finds this brief reference
insufficient to warrant a different outcome or trigger the Ragland analysis Plaintiff claims is
necessary.  First, as previously explained in text, the ALJ's credibility findings were not *based
on* Plaintiff's failure to pursue treatment.  Second, unlike the claimant in Ragland, Plaintiff in
this case never *offered* any excuse for declining or failing to pursue treatment.  See Raglan, 992
F.2d at 1060 (providing that *after* claimant testified she did not have money for medical
treatment the ALJ should have considered the justifiable excuse factors) (emphasis added); see
also Lee v. Barnhart, 117 Fed. Appx. 674, 681 (10th Cir. 2004) (providing that claimant's
testimony regarding inability to pay triggered duty on part of ALJ to determine whether financial
reasons, in fact, explained claimant's failure to pursue treatment).  It seems unreasonable to
place upon the ALJ the burden of exploring every imaginable reason why a claimant might not
have continued treatment when no reason or excuse was offered in the first instance.  Finally, in
Hersch v. Barnhart, 470 F.Supp.2d 1281 (D. Utah 2006), this Court, citing the Tenth Circuit in
Hargis v. Sullivan, 945 F.2d 1482, 1489 (10th Cir. 1991), stated that "failure to follow a
prescribed treatment plan is probative of whether or not a claimant has exaggerated the

**B.      Failure to Support RFC Determination with Supporting Medical Records and Evidence**

Finally, Plaintiff claims that the ALJ's decision should be reversed because the ALJ failed to provide support for his RFC assessment with reference to specific supporting medical records.  (Pl.'s Br. Argument III.)  After reviewing the evidence of record, the ALJ in this case determined "there [was] a lack of significant objective medical findings to show that the claimant's impairments were of such a degree as to prevent her from performing any substantial gainful activity."  (Tr. at 20.)  Accordingly, he concluded that Plaintiff was capable of performing her past relevant work as a front office desk clerk, a light/semi-skilled job, and a cashier, a light/unskilled job.

In reaching this conclusion, the ALJ thoroughly considered and summarized the medical and non-medical evidence of record.  With regard to the medical evidence, the ALJ considered, among other things, the September 2002 emergency report that was prepared following a traffic accident, including the diagnostic imaging and x-ray of Plaintiff's lumbar spine and c-spine.  (Tr. at 18, 20.)  The ALJ also reviewed and summarized the medical documentation generated by each of Plaintiff's out-patient office visits to the WRC Family Practice Department at the Westridge Center during the fall of 2003.  (Tr. at 18, 20.)  Further, he considered a series of medical records concerning Plaintiff's emergency room visit and subsequent hospitalization for pneumonia in October 2003.  (Tr. at 18-19.)  Additionally, the ALJ considered the October 2004 physical therapy functional status examination, the June 2005 evaluation and follow-up by Dr. Lance Rowlands, as well as Dr. Richard Backman's July 2005 examination and MRI of

symptoms that the plan was meant to ameliorate."  Hersch, 470 F.Supp.2d at 1285.

Plaintiff's lumbar spine.  (Tr. at 18-21.)

While the various medical providers acknowledged that Plaintiff suffers from certain limitations, the ALJ noted that none of the physicians who treated Plaintiff ever opined that Plaintiff's impairments were of disabling severity.  Similarly, no physician ever determined that the Plaintiff suffered from any limitations in excess of those which the ALJ included in his assessment of Plaintiff's residual functional capacity.[6]  See, e.g., Kelly v. Chater, 62 F.3d 335, 338 (10th Cir. 1995) (ALJ's finding that claimant could perform a significant number of jobs supported by fact that no physician opined that claimant was disabled).  Based on the foregoing, the Court finds that substantial evidence supports the RFC determination.

## CONCLUSION

Having determined that the Commissioner's decision is supported by substantial evidence and no legal errors occurred, the Commissioner's decision is AFFIRMED.

It is so ordered.

Dated this 4th day of January, 2008.

_____
Dee Benson
United States District Court Judge

_____

[6] In fact, the ALJ's RFC assessment of Plaintiff was actually more conservative than the restrictions identified by the State agency physicians.  While the State agency physicians opined that Plaintiff's "limitations can only be reduced to a medium strength RFC," (Tr. at 186),  the ALJ found Plaintiff's limitations to be more significant, concluding that Plaintiff was capable only of "light/semi-skilled or unskilled" work.  (Tr. at 22.)